Citation Nr: 1104828 
Decision Date: 02/07/11 Archive Date: 02/14/11

DOCKET NO. 08-21 776 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Detroit, 
Michigan

THE ISSUES

1. Entitlement to an initial compensable evaluation for service-
connected recurrent left shoulder bursitis or sprain by history. 

2. Entitlement to service connection for a psychiatric disorder. 

3. Entitlement to service connection for recurrent left ankle 
sprain, to include as secondary to a service-connected 
disability. 

REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the 
United States

ATTORNEY FOR THE BOARD

Shabnam Keyvan

INTRODUCTION

The Veteran served on active duty from October 2002 to August 
2006.

This matter comes before the Board of Veterans' Appeals (BVA or 
Board) on appeal from the August 2007 rating decision of the 
Department of Veterans Affairs (VA) Regional Office (RO) in 
Detroit, Michigan, which, in pertinent part, granted service 
connection for left shoulder bursitis or sprain, evaluating it as 
noncompensably disabling, and denied service connection for a 
generalized anxiety disorder and a recurrent left ankle sprain. 

The claims of entitlement to service connection for a psychiatric 
disorder and a recurrent left ankle sprain are addressed in the 
REMAND portion of the decision below and are being REMANDED to 
the RO via the Appeals Management Center (AMC), in Washington, 
DC. 

FINDINGS OF FACT

1. The Veteran is left-hand dominant. 

2. The Veteran's service-connected recurrent left shoulder 
bursitis or sprain is manifested by limitation of abduction to no 
worse than 140 degrees, forward elevation to no worse than 140 
degrees, internal rotation to 30 degrees, external rotation to 80 
degrees, and no complaints of pain on movement. No additional 
impairment resulting from excess fatigability, pain, weakness, of 
lack of endurance of his left shoulder has been shown. 

CONCLUSION OF LAW

The criteria for an initial compensable evaluation for service-
connected recurrent left shoulder bursitis or sprain by history 
have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 
2002); 38 C.F.R. §§ 3.102, 3.159, 4.1-4.14, 4.40-4.45, 4.59, 
4.71a, Diagnostic Codes 5019, 5201 (2010). 

REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Veterans Claims Assistance Act of 2000

Upon receipt of a substantially complete application for 
benefits, VA must notify the claimant what information or 
evidence is needed in order to substantiate the claim and it must 
assist the claimant by making reasonable efforts to get the 
evidence needed. 38 U.S.C.A. §§ 5103(a), 5103A; 38 C.F.R. § 
3.159(b); see Quartuccio v. Principi, 16 Vet. App. 183, 187 
(2002). The notice required must be provided to the claimant 
before the initial unfavorable decision on a claim for VA 
benefits, and it must (1) inform the claimant about the 
information and evidence not of record that is necessary to 
substantiate the claim; (2) inform the claimant about the 
information and evidence that VA will seek to provide; and 
(3) inform the claimant about the information and evidence that 
claimant is expected to provide. 

In Dingess v. Nicholson, 19 Vet. Ap. 473 (2006), the United 
States Court of Appeals for Veterans Claims (Court) held that, 
upon receipt of an application for a service connection claim, VA 
is required to review the evidence presented with the claim and 
to provide the claimant with notice of what evidence not 
previously provided will help substantiate his/her claim. See 
also 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b). Specifically, 
VA must notify the claimant of what is required to establish 
service connection and that a disability rating and effective 
date for the award of benefits will be assigned if service 
connection is awarded. 

When VA receives a substantially complete application for 
benefits, 38 U.S.C. § 5103(a) and 38 C.F.R. § 3.159(b) require VA 
to review the information and the evidence presented with the 
claim and to provide the claimant with notice of what information 
and evidence not previously provided, if any, will assist in 
substantiating, or is necessary to substantiate, each of the five 
elements of the claim, including notice of what is required to 
establish service connection and that a disability rating and an 
effective date for the award of benefits will be assigned if 
service connection is awarded. Dingess v. Nicholson, 19 Vet. 
App. 473 (2006). 

Where service connection has been granted and an initial 
disability rating and effective date have been assigned, the 
claim for service connection has been substantiated, and any 
defect in the notice regarding that claim was therefore not 
prejudicial to the claim. Dingess, 19 Vet. App. at 491. Where 
the appellant then files a notice of disagreement (NOD) with the 
initial rating and/or the effective date assigned, the appellant 
has initiated the appellate process and different, and in many 
respects, more detailed notice obligations arise, the 
requirements of which are set forth in sections 7105(d) and 5103A 
of the statute. Id; Goodwin v. Peake, 22 Vet. App. 128, 137 
(2008); 38 U.S.C.A. § 5103(A) & 7105(d). 

Here, prior to the initial adjudication of the Veteran's claim 
seeking service connection for a left shoulder condition in 
August 2007, the RO sent the Veteran a letter in June 2007 which 
satisfied the duty to notify provisions with respect to this 
service connection claim, and informed him how a disability 
rating and effective date would be assigned should service 
connection be granted. In any event, because the claim for 
service connection has been granted, any defect in the notice or 
timing of the notice about how a disability rating and effective 
date would be determined was harmless error as to this claim. 
Dingess, 19 Vet. App. at 491; Goodwin, 22 Vet. App. at 137. 

Rather, in the current appeal, the Veteran challenges the initial 
evaluation assigned following the grant of service connection for 
his recurrent left shoulder bursitis or sprain. The Veteran 
submitted his NOD regarding the August 2007 rating decision, in 
October 2007, thereby triggering the notice obligations set forth 
in sections 7105(d) and 5103A of the statute. The RO then 
fulfilled these notice obligations by issuing a Statement of the 
Case (SOC) in April 2008 which informed the Veteran of the 
regulations pertinent to his appeal (including the applicable 
rating criteria), advised him of the evidence that had been 
reviewed in connection with his appeal, and provided him with 
reasons for its decisions. 38 U.S.C.A. § 7105(d). Thus, the 
notice obligations set forth in sections 7105(d) and 5103A of the 
statute have been fulfilled. 

The Board also concludes that VA's duty to assist the Veteran has 
been satisfied in this case. The Veteran's service treatment 
records as well as all identified and available VA and private 
medical records pertinent to the years after service are in the 
claims file and were reviewed by both the RO and the Board in 
connection with the Veteran's increased rating claim. Moreover, 
in addition to obtaining all relevant records, the Veteran was 
also afforded a VA examination for his shoulder condition in July 
2007. There is no objective evidence indicating that there has 
been a material change in the severity of his service-connected 
disorder since the Veteran was last examined. See 38 C.F.R. 
§ 3.327(a) (2010). The duty to assist does not require that a 
claim be remanded solely because of the passage of time since 
otherwise adequate VA examinations were conducted. See 
VAOPGCPREC 11-95. 

To that end, when VA undertakes to provide a VA examination or 
obtain a VA opinion, it must ensure that the examination or 
opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 
(2007). As noted below, the Board finds that the VA examination 
obtained in this case is more than adequate, as it was predicated 
on a review of the Veteran's medical records, an interview with 
the Veteran, and a discussion of his medical history and because 
the examination fully addresses the rating criteria that is 
relevant to rating the disability in this case. Thus, there is 
adequate medical evidence of record to make a determination in 
this case. Accordingly, the Board finds that VA's duty to assist 
with respect to obtaining a VA examination with respect to the 
compensable rating issue on appeal has been met. 38 C.F.R. 
§ 3.159(c)(4). 

With no indication that any failure on the part of VA to provide 
additional notice or assistance reasonably affects the outcome of 
this case, the Board finds that any such failure is harmless. 
Mayfield v. Nicholson, 19 Vet. App. 103 (2005), rev'd on other 
grounds, Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006). 

II. Merits of the Claim-Compensable Rating For Left Shoulder

Disability ratings are determined by applying the criteria set 
forth in the VA Schedule for Rating Disabilities, found in 38 
C.F.R., Part 4. The rating schedule is primarily a guide in the 
evaluation of disability resulting from all types of diseases and 
injuries encountered as a result of or incident to military 
service. The ratings are intended to compensate, as far as can 
practicably be determined, the average impairment of earning 
capacity resulting from such diseases and injuries and their 
residual conditions in civilian occupations. 38 U.S.C.A. § 1155; 
38 C.F.R. § 4.1. Where there is a question as to which of two 
evaluations shall be applied, the higher evaluation will be 
assigned if the disability picture more nearly approximates the 
criteria for that rating. 38 C.F.R. § 4.7. 

In considering the severity of a disability, it is essential to 
trace the medical history of the Veteran. 38 C.F.R. §§ 4.1, 4.2, 
4.41. Consideration of the whole-recorded history is necessary 
so that a rating may accurately reflect the elements of 
disability present. 38 C.F.R. § 4.2; Peyton v. Derwinski, 1 Vet. 
App. 282 (1991). While the regulations require review of the 
recorded history of a disability by the adjudicator to ensure a 
more accurate evaluation, the regulations do not give past 
medical reports precedence over the current medical findings. 
Where an increase in the disability rating is at issue, the 
present level of the Veteran's disability is the primary concern. 
Francisco v. Brown, 7 Vet. App. 55, 58 (1994). 

Where a Veteran appeals the initial rating assigned for a 
disability when a claim for service connection for that 
disability has been granted, evidence contemporaneous with the 
claim for service connection and with the rating decision 
granting service connection would be most probative of the degree 
of disability existing at the time that the initial rating was 
assigned and should be the evidence "used to decide whether an 
[initial] rating on appeal was erroneous...." Fenderson v. West, 
12 Vet. App. 119, 126 (1999). If later evidence obtained during 
the appeal period indicates that the degree of disability 
increased or decreased following the assignment of the initial 
rating, 'staged' ratings may be assigned for separate periods of 
time based on facts found. Id.; see also Hart v. Mansfield, 21 
Vet. App. 505 (2007) (VA's determination of the 'present level' 
of a disability may result in a conclusion that the disability 
has undergone varying and distinct levels of severity throughout 
the entire time period the increased rating claim has been 
pending). 

Disability of the musculoskeletal system is primarily the 
inability, due to damage or infection in the parts of the system, 
to perform the normal working movements of the body with normal 
excursion, strength, speed, coordination, and endurance. It is 
essential that the examination on which ratings are based 
adequately portray the anatomical damage and the functional loss 
with respect to all of these elements. In evaluating 
disabilities of the musculoskeletal system, it is necessary to 
consider, along with the scheduler criteria, functional loss due 
to flare-ups of pain, fatigability, incoordination, pain on 
movement, and weakness. DeLuca v. Brown, 8 Vet. App. 202 (1995). 
The functional loss may be due to absence of part, or all, of the 
necessary bones, joints and muscles, or associated innervation, 
or other pathology and evidenced by visible behavior of the 
claimant undertaking the motion. Weakness is as important as 
limitation of motion, and a part that becomes painful on use must 
be regarded as seriously disabled. 38 C.F.R. § 4.40. Pain on 
movement, swelling, deformity or atrophy of disuse as well as 
instability of station, disturbance of locomotion, interference 
with sitting, standing and weight bearing are relevant 
considerations for determination of joint disabilities. 38 
C.F.R. § 4.45. Painful, unstable, or malaligned joints, due to 
healed injury, are entitled to at least the minimal compensable 
rating for the joint. 38 C.F.R. § 4.59. 

Pyramiding, that is the evaluation of the same disability, or the 
same manifestation of a disability, under different diagnostic 
codes, is to be avoided when evaluation a Veteran's service-
connected disability. 38 C.F.R. § 4.14 (2010). However, it is 
possible for a Veteran to have separate and distinct 
manifestations from the same injury which would permit rating 
under several diagnostic codes; the critical element in 
permitting the assignment of several evaluations under various 
diagnostic codes is that none of the symptomatology for any one 
of the conditions is duplicative or overlapping with the 
symptomatology of the other condition. See Esteban v. Brown, 6 
Vet. App. 259, 261-62 (1994). 

The assignment of a particular Diagnostic Code is "completely 
dependent on the facts of a particular case." See Butts v. 
Brown, 5 Vet. App. 532, 538 (1993). One Diagnostic Code may be 
more appropriate than another based on such factors as an 
individual's relevant medical history, the current diagnosis, and 
demonstrated symptomatology. Any change in Diagnostic Code by a 
VA adjudicator must be specifically explained. See Pernorio v. 
Derwinski, 2 Vet. App. 625, 629 (1992). 

In reaching the following decision, the Board has considered the 
Veteran's assertions regarding the severity of his left shoulder 
symptoms. Indeed, in the current appeal, the Veteran contends 
that he is entitled to an initial compensable evaluation for the 
service-connected bursitis of his left shoulder because the 
current noncompensable evaluation does not adequately reflect the 
current severity of his disability. See July 2008 substantive 
appeal. The Board finds that the Veteran is certainly competent 
to discuss the severity of his symptomatology. As a lay person, 
however, the Board gives more weight to the specific objective 
findings obtained through specialized testing and physical 
examinations. Such matters require medical expertise to 
determine. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 
(Fed. Cir. 2007). 

The Veteran's recurrent left shoulder bursitis or sprain is 
currently assigned a noncompensable disability evaluation. See 
38 C.F.R. § 4.71a, Diagnostic Codes 5201-5019 (2010) (hyphenated 
diagnostic codes are used when a rating under one diagnostic code 
requires use of an additional diagnostic code to identify the 
basis for the evaluation assigned, the additional code is shown 
after the hyphen). 

Handedness for the purpose of a dominant rating will be 
determined by the evidence of record, or by testing on VA 
examination. Only one hand shall be considered dominant. The 
Veteran is left handed and as such, major, as opposed to minor, 
extremity disability ratings are applicable. 38 C.F.R. § 4.69. 

Diagnostic Code 5019 provides that bursitis will be rated on 
limitation of motion of the affected part as degenerative 
arthritis. Diagnostic Code 5003 provides that degenerative 
arthritis established by x-ray findings will be rated on the 
basis of limitation of motion under the appropriate diagnostic 
codes for the specific joint or joints involved, which in this 
case would be Diagnostic Code 5201 (limitation of motion of arm). 
Limitation of motion must be objectively confirmed by findings 
such as swelling, muscle spasm, or satisfactory evidence of 
painful motion. In the absence of limitation of motion, a 10 
percent evaluation is warranted if there is X-ray evidence of 
involvement of two or more major joints or two or more minor 
joint groups and a 20 percent evaluation is authorized if there 
is X-ray evidence of involvement of two or more major joints or 
two or more minor joint groups and there are occasional 
incapacitating exacerbations. 38 C.F.R. § 4.71a, Diagnostic Code 
5003. For rating disability based on arthritis, the shoulder is 
considered a major joint. 38 C.F.R. § 4.45(f). 

Under Diagnostic Code 5201, for a dominant arm, a 20 percent 
evaluation is provided for limitation of motion of the arm at 
shoulder level; a 30 percent evaluation may be assigned for 
limitation of motion midway between the side and shoulder level; 
and a 40 percent evaluation may be assigned for limitation of 
major arm motion to 25 degrees from the side. See 38 C.F.R. 
§ 4.71a, Diagnostic Code 5201.

The standard ranges of motion of the shoulder are 180 degrees for 
forward elevation (flexion) and 180 degrees for abduction. The 
standard range of motion for internal and external rotation is 90 
degrees. 38 C.F.R. § 4.71, Plate I.

The Board observes that the rating schedule contains additional 
diagnostic codes pertaining to the shoulder and arm. See 38 
C.F.R. § 4.71a, Diagnostic Codes 5200, 5202, 5203 (2010). 
However, the competent medical and other evidence of record fails 
to show ankylosis of the scapulohumeral articulation, malunion of 
the humerus, recurrent dislocation of the scapulohumeral joint, 
or nonunion of or dislocation of the clavicle or scapula at any 
time during the appeal period. Thus, DCs, 5200, 5202, and 5203 
are not for application at any time during the appeal period. 

In considering the evidence of record under the laws and 
regulations as set forth above, the Board concludes that the 
Veteran is not entitled to an initial compensable evaluation for 
his recurrent left shoulder bursitis or sprain. 

The Veteran was afforded a VA examination in July 2007, during 
which he reported to have recurrent pain in his left shoulder 
since having served in Iraq in 2005. According to the Veteran, 
the pain in his left shoulder flares up a few times a week, 
especially at night, and on a scale of one to ten (one being the 
least pain and ten being the most), he rates his pain at a seven. 
He explained that the pain can last from a few hours to an entire 
day, that he has not undergone any intraarticular injections or 
joint surgeries for this condition, and that he occasionally 
experiences a popping sensation in his left shoulder joint. Upon 
physical examination of his left shoulder, the Veteran was shown 
to have abduction to 140 degrees, adduction to 30 degrees, 
forward elevation to 140 degrees, internal rotation to 30 
degrees, and external rotation to 80 degrees. Based on the 
examiner's observations, the left shoulder joint displayed no 
signs of swelling, tenderness, crepitus, redness, warmth or any 
obvious deformities. The examiner noted that pain was not shown 
upon repetitive movement, and diagnosed the Veteran with 
recurrent left shoulder bursitis or sprain, by history. The 
examiner further observed that the Veteran's joint function was 
not additionally limited by pain, weakness, fatigue or lack of 
endurance after repetitive use. 

The Veteran also underwent an X-ray of his left shoulder, the 
results of which revealed no fracture, deformity or calcific 
tendinitis. The impression derived from this X-report reflects a 
negative study. 

A private treatment reported dated in January 2008 reflects the 
Veteran's complaints of pain in his left shoulder. The treatment 
provider assessed the Veteran with left shoulder pain, and 
recommended that he take 800 milligrams of Motrin at least two 
times a day to help alleviate his pain. 

As previously discussed, the radiographic evidence of record does 
not demonstrate the involvement of two or more major joints or 
two or more minor joint groups. Therefore, an initial evaluation 
of 10 percent or higher is not warranted under Diagnostic Code 
5003. 

Furthermore, the competent medical evidence of record does not 
reflect limitation of motion of the arm at shoulder level, midway 
between the side and shoulder level or major arm motion to 25 
degrees from the side. Specifically, the July 2007 VA 
examination report reflects forward elevation to 140 degrees and 
abduction to 140 degrees, with no complaints of pain on movement. 
These measurements far exceed the criteria for a compensable 
rating under Diagnostic Code 5201. 

The Board has also considered the provisions of 38 C.F.R. §§ 
4.40, 4.45, 4.59, and the holdings in DeLuca. However, an 
initial compensable evaluation for the Veteran's left shoulder 
bursitis is not warranted on the basis of functional loss due to 
pain or weakness in this case, as the Veteran's symptoms are 
supported by pathology consistent with the assigned 
noncompensable rating, and no higher. In this regard, the Board 
acknowledges the Veteran's complaints of pain in his left 
shoulder, despite the July 2007 VA examiner's observation that 
there was no sign of pain upon repetitive movement. However, the 
Board notes that the effect of the recurrent pain in the 
Veteran's left shoulder is contemplated in the currently assigned 
noncompensable disability evaluation under Diagnostic Code 5201. 
Indeed, the August 2007 rating decision specifically considered 
the Veteran's pain in its grant of the noncompensable evaluation. 
The Veteran's complaints do not, when viewed in conjunction with 
the medical evidence, tend to establish weakened movement, excess 
fatigability, or incoordination to the degree that would warrant 
a higher initial evaluation. In fact, the July 2007 VA examiner 
noted that there was no additional limitation of joint function 
due to pain, weakness, fatigue or lack of endurance after 
repetitive use. Therefore, the Board finds that the 
preponderance of the evidence is against an initial compensable 
evaluation for the Veteran's left shoulder bursitis or sprain. 

III. Extraschedular Consideration

In denying the claim for a higher rating, the Board also has 
considered whether the Veteran is entitled to a greater level of 
compensation on an extra-schedular basis. Ordinarily, the VA 
Schedule will apply unless there are exceptional or unusual 
factors which would render application of the schedule 
impractical. See Fisher v. Principi, 4 Vet. App. 57, 60 (1993).

According to the regulation, an extraschedular disability rating 
is warranted based upon a finding that the case presents such an 
exceptional or unusual disability picture with such related 
factors as marked interference with employment or frequent 
periods of hospitalization that would render impractical the 
application of the regular schedular standards. 38 C.F.R. § 
3.321(b)(1) (2010). An exceptional case is said to include such 
factors as marked interference with employment or frequent 
periods of hospitalization as to render impracticable the 
application of the regular schedular standards. Fanning v. 
Brown, 4 Vet. App. 225, 229 (1993). 

Under Thun v. Peake, 22 Vet App 111 (2008), there is a three- 
step inquiry for determining whether a Veteran is entitled to an 
extraschedular rating. First, the Board must first determine 
whether the evidence presents such an exceptional disability 
picture that the available schedular evaluations for that 
service-connected disability are inadequate. Second, if the 
schedular evaluation does not contemplate the claimant's level of 
disability and symptomatology and is found inadequate, the Board 
must determine whether the claimant's disability picture exhibits 
other related factors such as those provided by the regulation as 
"governing norms." Third, if the rating schedule is inadequate 
to evaluate a Veteran's disability picture and that picture has 
attendant thereto related factors such as marked interference 
with employment or frequent periods of hospitalization, then the 
case must be referred to the Under Secretary for Benefits or the 
Director of the Compensation and Pension Service to determine 
whether, to accord justice, the veteran's disability picture 
requires the assignment of an extraschedular rating.

With respect to the first prong of Thun, the evidence in this 
case does not show such an exceptional disability picture that 
the available schedular evaluation for the service-connected left 
shoulder disability is inadequate. A comparison between the 
level of severity and symptomatology of the Veteran's left 
shoulder with the established criteria found in the rating 
schedule for disabilities of the shoulder shows that the rating 
criteria reasonably describes the Veteran's disability level and 
symptomatology; as discussed above, the rating criteria considers 
range of motion, instability, and pain on motion.

The Board further observes that, even if the available schedular 
evaluation for the disability is inadequate (which it manifestly 
is not), the Veteran does not exhibit other related factors such 
as those provided by the regulation as "governing norms." The 
record does not show that the Veteran has required frequent 
hospitalizations for his service-connected disabilities. Indeed, 
based on the post-service treatment records, it does not appear 
that the Veteran has required any additional surgery or 
hospitalization for his left shoulder. 

Additionally, there is not shown to be evidence of marked 
interference with employment due to the disability. While the 
Veteran asserts in his July 2008 substantive appeal that he is 
currently unemployed and unable to obtain employment, the 
evidence of record reflects that the Veteran did work as a 
salesman for a brief period of time while simultaneously pursuing 
a college degree in human resources. The Veteran has not 
attributed his difficulty obtaining employment to his service-
connected left shoulder disability, and there is nothing in the 
record which suggests that the left shoulder disability markedly 
impacted his ability to pursue his studies or perform his duties 
as a salesman. Indeed, even if the Veteran did experience 
difficulty performing his duties at work, there is nothing in the 
record to show that he is unable to obtain a different form of 
employment. Moreover, there is no evidence in the medical 
records of an exceptional or unusual clinical picture. 

In short, there is nothing in the record to indicate that the 
Veteran's service-connected disability on appeal causes 
impairment with employment over and above that which is 
contemplated in the assigned schedular rating. See Van Hoose v. 
Brown, 4 Vet. App. 361, 363 (1993) [noting that the disability 
rating itself is recognition that industrial capabilities are 
impaired]. The Board therefore has determined that referral of 
this case for extra-schedular consideration pursuant to 38 C.F.R. 
3.321(b)(1) is not warranted. 

ORDER

Entitlement to an initial compensable evaluation for the service-
connected recurrent left shoulder bursitis or sprain by history 
is denied. 

(CONTINUED ON NEXT PAGE)
REMAND

The law provides that the VA shall make reasonable efforts to 
notify a claimant of the evidence necessary to substantiate a 
claim and requires the VA to assist a claimant in obtaining that 
evidence. 38 U.S.C.A. §§ 5103, 5103A (West 2002); 38 C.F.R. § 
3.159 (2010). Such assistance includes providing the claimant a 
medical examination or obtaining a medical opinion when such an 
examination or opinion is necessary to make a decision on a 
claim. 38 U.S.C.A. §§ 5103, 5103A (West 2002); 38 C.F.R. § 3.159 
(2010). 

The Veteran contends, in his May 2007 claim, his October 2007 
NOD, and his July 2008 substantive appeal, that he suffers from 
an anxiety disorder and a left ankle condition, both of which are 
related to his years of active service. In particular, the 
Veteran maintains that his left ankle condition developed as a 
result of his service-connected right ankle sprain. 

A. Psychiatric Disorder

The Veteran's service treatment records are clear for any 
complaints of, treatment for, or findings of any type of 
psychiatric disorder. On the September 2002 enlistment 
examination report, the clinical evaluation of his psychiatric 
condition was shown to be normal. In addition, the Veteran did 
not indicate having at that time or previously having any type of 
nervous trouble, depression or excessive worry in his report of 
medical history. A March 2002 Chronological Record of Medical 
Care reflects the Veteran was seen for counseling regarding his 
alcohol use, however the record does not discuss whether he had 
any type of underlying mental condition which lead to his alcohol 
use. The remainder of the Veteran's service treatment records 
reflects treatment for his right ankle injury, but is absent any 
mention, complaints, or notations of any type of psychiatric or 
mental disorder. 

The Veteran's DD 214 reflects that in addition to his service in 
Iraq for one year, he also served in a "Designated Imminent 
Danger Pay Area." 

The Veteran was provided a VA examination in July 2007, during 
which he discussed his military history with the examiner. The 
Veteran states that, after his service in Germany, he was 
deployed to Southwest Asia wherein he spent twelve months near 
the city of Baqubah, Iraq, and while he was not in the direct 
line of fire, he did hear rocket and mortar fire many nights. 
The Veteran informed the examiner that, since beginning his post-
service employment as a salesman, he has been counseled regarding 
his irritability, and he has a difficult time accepting 
authority. The examiner observed the Veteran's mood to be mildly 
anxious, and his range of affect to be broadly reactive. The 
examiner further noted that the Veteran "endorses a persistent 
sense of apprehension and edginess, irritability and [an] easily 
engaged temper." The Veteran indicates that while his health 
and finances are areas of specific concern, he always feels a 
level of anxiety. He further reports experiencing recurrent 
dreams of being stationed in the desert. The examiner diagnosed 
the Veteran with generalized anxiety disorder, and concluded that 
his "current presentation, symptom complaints and history are 
fully consistent" with such a diagnosis. However, the examiner 
did not provide an opinion with respect to whether this 
disability was etiologically related to the Veteran's service. 

VA has a duty to obtain a medical examination when the record 
contains competent evidence of a current disability or symptoms 
of a current disability; evidence establishing that an event, 
injury, or disease occurred in service; an indication that the 
disability or persistent or recurrent symptoms of a disability 
may be associated with service or a service-connected disability; 
and insufficient evidence to decide the case. 38 U.S.C.A. 
§5103A; 38 C.F.R. §3.159(c)(4); see also McLendon v. Nicholson, 
20 Vet. App. 79 (2006). If the VA undertakes the effort to 
provide the Veteran with a medical examination, it must ensure 
that such exam is an adequate one. See Barr v. Nicholson, 21 
Vet. App. 303, 311 (2007). 

The Board finds that the July 2007 VA examination was an 
inadequate examination for purposes of the Veteran's claim 
seeking service connection for a psychiatric disorder. An 
opinion regarding the etiology of the Veteran's generalized 
anxiety disorder was not given. Under the circumstances 
presented in this case (including particularly the fact that 
psychiatric symptoms were shown shortly after the Veteran's 
discharge from service), the Board finds that a new VA medical 
examination and opinion is required. 

B. Left Ankle Condition

As previously discussed above, the Veteran maintains that his 
left ankle condition is related to his military service. 
Alternatively, he contends that his left ankle condition is 
secondary to his service-connected right ankle disability. 

Under section 3.310(a) of VA regulations, service connection may 
be established on a secondary basis for a disability which is 
proximately due to or the result of service- connected disease or 
injury. 38 C.F.R. § 3.310(a). Establishing service connection 
on a secondary basis requires evidence sufficient to show (1) 
that a current disability exists and (2) that the current 
disability was either (a) proximately caused by or (b) 
proximately aggravated by a service-connected disability. Allen 
v. Brown, 7 Vet. App. 439, 448 (1995) (en banc). Where a 
service-connected disability aggravates a nonservice-connected 
condition, a Veteran may be compensated for the degree of 
disability (but only that degree) over and above the degree of 
disability existing prior to the aggravation. Allen, 7 Vet. App. 
at 448. Temporary or intermittent flare-ups of symptoms of a 
condition, alone, do not constitute sufficient evidence of 
aggravation unless the underlying condition worsened. Cf. Davis 
v. Principi, 276 F. 3d 1341, 1346-47 (Fed. Cir. 2002); Hunt v. 
Derwinski, 1 Vet. App. 292, 297 (1991).

The Veteran's service treatment records reflect that he injured 
his right ankle in August 2004 while playing basketball. In the 
August 2004 Chronological Record of Medical Care, the treatment 
provider diagnosed the Veteran with a right ankle sprain and 
provided him an ankle brace. In a September 2004 follow-up 
visit, the Veteran complained that his right ankle was 
"swollen," and "pops upon rotation." He was again diagnosed 
with a chronic right ankle sprain, and the treatment provider 
prescribed him with 800 milligrams of Motrin, recommending that 
he follow-up for a re-evaluation in several months. The 
remainder of the Veteran's service-treatment records is clear for 
any treatment for or diagnosis of a left ankle condition. 

The Veteran was provided a VA examination for his left ankle 
condition in July 2007. At the examination, the Veteran 
complained of recurrent left ankle pain during the prior six 
months, and related this pain to his right ankle condition. He 
denied any specific injuries or sprain to the left ankle, but 
indicated that he experiences pain in the left ankle several 
times a month, especially after prolonged standing and 
participating in sports activities. The Veteran did not report 
to experience any swelling, popping or locking sensation in the 
left ankle joint, and stated that his activities of daily living 
and occupational duties were not restricted as a result of the 
left ankle condition. The Veteran also underwent an X-ray of his 
left ankle, the results of which reflected no evidence of a 
fracture. After interviewing the Veteran and conducting a 
thorough physical examination of both his ankles, the examiner 
diagnosed him with a left and right ankle sprain. However, the 
examiner did not provide an etiological opinion with respect to 
whether the Veteran's left ankle sprain was related to service 
and/or secondary to his right ankle sprain. 

In the August 2007 rating decision, the RO granted service 
connection for the Veteran's right ankle sprain. The Veteran 
maintains that his left ankle condition developed after he was 
forced to place additional pressure on it to compensate for his 
right ankle condition. He contends that his left ankle sprain is 
secondary to his service-connected right ankle sprain. Since the 
examiner did not provide any opinion with regard to the etiology 
of the Veteran's left ankle sprain, the Board finds that a remand 
is necessary to determine in particular whether the Veteran's 
left ankle sprain is related to his service-connected right ankle 
disability, or is otherwise related to his military service. 

Accordingly, the case is REMANDED for the following action:

1. Furnish the Veteran a corrective Veterans 
Claims Assistance Act of 2000 (VCAA) 
notification letter pertaining to the 
issue of entitlement to service connection 
for a left ankle disability, asserted to 
be secondary to the service-connected 
right ankle disability. 

2. The Veteran should be afforded a VA 
psychiatric examination for the purpose of 
determining the nature, extent, and 
etiology of any psychiatric disorder that 
he may have. The claims folder and a copy 
of this REMAND must be made available to 
the examiner in conjunction with the 
examination. The examiner must indicate 
that the claims folder was reviewed, and a 
report of the examination should include a 
discussion of the Veteran's medical 
history and assertions. All necessary 
tests and studies, to include 
psychological testing, should be 
accomplished, and all clinical findings 
should be reported in detail. 

The examiner must review all pertinent 
records and subsequent VA and private 
treatment records. The examiner should 
then provide an opinion as to the 
likelihood (likely, unlikely, at least as 
likely as not) that any psychiatric 
disorder found on examination had its 
onset in service, or is otherwise causally 
or etiologically related to active 
service. 

The term "at least as likely as not" does 
not mean within the realm of medical 
possibility, but rather that the medical 
evidence both for and against a conclusion 
is so evenly divided that it is as 
medically sound to find in favor of the 
conclusion as it is to find against it. 

A clear rationale for all opinions would 
be helpful and a discussion of the facts 
and medical principles involved would be 
of considerable assistance to the Board. 

3. The Veteran should also be scheduled for 
an appropriate VA examination to determine 
the nature, extent, and etiology of his 
left ankle sprain. The claims folder and 
a copy of this REMAND must be made 
available to the examiner for review in 
conjunction with the examination. The 
examiner must indicate that the claims 
folder was reviewed, and a report of the 
examination should include a discussion of 
the Veteran's medical history and 
assertions. All necessary tests and 
studies should be accomplished, and all 
clinical findings should be reported in 
detail. 

The examiner must review all pertinent 
records and subsequent VA and private 
treatment records. The examiner should 
then offer an opinion as to the likelihood 
(likely, unlikely, at least as likely as 
not) that the Veteran's left ankle sprain 
is causally or etiologically related to 
service. If not, the examiner should 
opine as to the likelihood (likely, 
unlikely, at least as likely as not) that 
the Veteran's left ankle sprain was 
caused, or aggravated by, the service-
connected right ankle sprain. 

Aggravation is defined for legal purposes 
as a permanent worsening of the underlying 
condition beyond the natural progress of 
the disorder, versus a temporary flare-up 
of symptoms. If the examiner determines 
that the Veteran's left ankle sprain was 
aggravated by the service-connected 
disability, the examiner should identify 
the level of disability caused by the 
service-connected right ankle sprain, to 
the extent possible. 

The term "at least as likely as not" does 
not mean within the realm of medical 
possibility, but rather that the medical 
evidence both for and against a conclusion 
is so evenly divided that it is as 
medically sound to find in favor of the 
conclusion as it is to find against it. 

A clear rationale for all opinions would 
be helpful and a discussion of the facts 
and medical principles involved would be 
of considerable assistance to the Board. 

4. Following completion of the above, 
re-adjudicate the issues of entitlement to 
service connection for a psychiatric 
disorder and entitlement to service 
connection for a recurrent left ankle 
sprain, to include as secondary to the 
service-connected right ankle disability. 
If the decisions remain in any way adverse 
to the Veteran, he and his representative 
should be provided with a supplemental 
statement of the case (SSOC). The SSOC 
must contain notice of all relevant 
actions taken on the claim for benefits, 
to include the applicable law and 
regulations considered pertinent to these 
issues as well as a summary of the 
evidence of record. An appropriate period 
of time should be allowed for response. 

No action is required of the Veteran until he is notified by the 
RO; however, the Veteran is advised that failure to report for 
any scheduled examination may result in the denial of his claims. 
38 C.F.R. § 3.655 (2010). The appellant has the right to submit 
additional evidence and argument on the matters that the Board 
has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law 
requires that all claims that are remanded by the Board or by the 
Court for additional development or other appropriate action must 
be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 
7112 (West Supp. 2010).

______________________________________________
THERESA M. CATINO
Acting Veterans Law Judge, Board of Veterans' Appeals

 Department of Veterans Affairs